UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SYLVIA JIBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 18 C 5594 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| THE NORTHEAST ILLINOIS REGIONAL | ) |
| COMMUTER RAILROAD CORPORATION | ) |
| d/b/a METRA, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Sylvia Jibson, an electrician working for Defendant Northeast Illinois Regional Commuter Railroad Corporation ("Metra"), brought this employment discrimination suit after Metra demoted her from her position as mechanical foreman. Jibson alleges sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, and 42 U.S.C. § 1983 ("§ 1983") (Counts I and II), age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count III), and retaliation under Title VII and § 1983 (Counts IV and V). Metra moves to dismiss Jibson's § 1983 and Title VII claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court concludes that Jibson cannot proceed with her § 1983 claims because she has not shown that Metra maintained a discriminatory custom or policy that caused the constitutional violations pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).[1] Jibson has, however, pleaded sufficient facts to proceed with her Title VII claims, and Metra's remaining arguments—that Jibson's claims are outside the

---

[1] As such, the Court does not reach Metra's further argument that her § 1983 claims are time-barred by the statute of limitations.

scope of her Equal Employment Opportunity Commission ("EEOC") complaint and that they are precluded by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*—are without merit. As such, the Court dismisses Jibson's § 1983 claims (Counts II and V) without prejudice and allows her to proceed on the remaining Counts.

## BACKGROUND[2]

Metra hired Jibson in 2008 as an experienced electrician in its mechanical department. Over the years, Jibson applied unsuccessfully to several supervisor positions and a general foreman position. Instead, Metra promoted less tenured, and less experienced, younger men into these positions, and "there appeared to be a less formal but pervasive customary practice by [Metra] of preferential treatment given to younger and male employees." Doc. 26 ¶ 13.

Jibson initially filed a complaint with Metra's internal Diversity Initiatives department, and she filed a grievance with her union. She then filed a complaint with the EEOC on March 3, 2016, alleging that Metra discriminated against her in its promotion decisions because of her sex and age. Jibson, who was born in 1953, was sixty-three at the time.

While this charge was still under investigation, Metra promoted Jibson to mechanical foreman in August 2017, making her one of two women in this position. The EEOC dismissed her complaint shortly thereafter on October 20, 2017.

Metra first assigned Jibson to its Western Avenue facility. Then, in September 2017, Metra transferred her to its Orland Park location under the immediate supervision of Art Olsen, director of the Rock Island District mechanical department. In this new position, management did not give Jibson training that was routinely offered to other newly promoted foremen, who

---

[2] The facts in the background section are taken from Jibson's amended complaint, and the exhibits attached thereto to the extent that they are consistent with the amended complaint, and are presumed true for the purpose of resolving Metra's motion to dismiss. *See Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

were mostly men. Jibson expected to receive training for two and a half weeks from another employee, Tim Brennan, but because Brennan had been hired six to eight months prior to Jibson, the training was "very limited." *Id.* ¶ 22. In other instances, management would only provide training after a problem occurred, such as on October 2, 2017, when Jibson's trouble understanding train brake shoes and air tests caused a train delay. When Jibson tried to speak to Olsen about work-related issues and her need for training by more experienced foremen, "he often responded that he 'didn't want to hear about it.'" *Id.* ¶ 35.

Olsen also subjected Jibson to a "pattern of condescending behavior." *Id.* ¶ 21. He frequently criticized and berated her for mistakes that stemmed from the lack of training. He did not instruct other employees to help her adjust to her position as they normally would with other newly promoted foremen. As Jibson was the only foreman assigned to the Orland Park location, management expected her to be proficient in several crafts in which she received little or no training. Olsen also "contrived issues" and then required Jibson to make written reports regarding how she handled the issues before she left for the day. Olsen often required her to complete these statements at the Metra 47th Street facility, which required her to drive one to two hours after she finished her 11 p.m. to 7 a.m. shift. Olsen also required her to attend a three-day training at the 47th Street facility after her shift, which caused her to work from 11 p.m. to 3 p.m. the next day, in addition to driving long commutes while she was very tired. Jibson suspected that Olsen was not happy with her promotion and intended to sabotage her during her probationary period.

On November 28, 2017, Jibson wrote an e-mail to Olsen and another manager regarding an employee who was having work performance issues. Olsen told her they would "take care of it." *Id.* ¶ 40. The next day, Metra, in a letter signed by Olsen, demoted Jibson "based on her

work performance history since accepting the Mechanical Foreman's position." Doc. 26 Ex F. Metra replaced her with a less-experienced African American woman who was in her late thirties to early forties, and whom Metra properly trained for the new position. Jibson "heard rumors among the other electricians that she had been treated unfairly and sabotaged" by Olsen. As a result of her demotion, she lags significantly behind less tenured, less experienced, and younger, mostly male electricians in terms of pay and promotional status.

While Olsen was directly responsible for most of the actions against her, Kevin McCann, the Chief of Mechanical, was the "final arbiter of personnel matters" and "allowed the discriminatory culture to flourish." Doc. 26 ¶ 51. After Jibson's demotion, there were still only two women, including her replacement, serving as foremen.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I. **Sufficiency of the Pleadings**

A. **§ 1983 Claims**

Metra first argues that Jibson has not adequately pleaded her claims of discrimination under § 1983 because she has not alleged that Metra maintained a policy or custom that caused the constitutional violations pursuant to *Monell*, 436 U.S. 658. *Monell* held that § 1983 claims against a municipality cannot be based on a *respondeat superior* theory.[3] *Id.* at 694. Rather, liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* This can be shown in three ways: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the constitutional injury." *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 844 (7th Cir. 2004). In the context of a motion to dismiss, the plaintiff must "'plead[ ] factual content that allows the court to draw the reasonable inference' that [Metra] maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [Jibson] belonged," and that this policy was the moving force behind the constitutional violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Because Jibson has not plausibly alleged that Metra maintained such a policy or custom, her § 1983 claims fail.

---

[3] Metra does not dispute that it can be held liable under § 1983 as a public corporation. *See Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 967 (N.D. Ill. 2003) (finding Metra to be a municipal corporation that is subject to § 1983).

5

Jibson states that "[t]his was a situation in which there was no officially adopted policy, written rule, or regulation, but an enduring practice or custom underlying the intentional, illegal discrimination."  Doc. 31 at 4.  She further states that Olsen worked in concert with McCann, the Chief of Mechanical, to implement the demotion against her, and that "[t]his employment practice was so widespread and well-settled that it constituted a custom or usage with the force of law."  *Id.*  To begin, these are largely conclusory allegations that the Court need not assume to be true.  *Iqbal*, 556 U.S. at 678 (on a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation" (citing *Twombly*, 550 U.S. at 555)).  Further, the discriminatory acts directed toward Jibson do not show that Metra "maintained a policy, custom, or practice of intentional discrimination against a *class of persons* to which [Jibson] belonged."  *McCauley*, 671 F.3d at 616 (emphasis added).  The one fact that plausibly supports this statement is that only two women serve in mechanical foremen positions.  But, without more, Jibson has pleaded facts that are at most "merely consistent with" a policy of discriminating against older women, and "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678.

Further, even if the Court were to assume that there was a widespread custom of discrimination, Jibson concedes that Olsen "was immediately responsible for the hostile, retaliatory behavior Plaintiff experienced."  Doc. 26 ¶ 51.  All of her allegations point to Olsen as the main instigator: "Olsen frequently criticized her," ¶ 26; "Olsen berated her when she made mistakes," ¶ 27; "[Jibson] strongly suspected that Olsen was unhappy with her promotion and would probably sabotage her," ¶ 36; and "[Jibson] heard the rumors among the other electricians that she had been treated unfairly and sabotaged by Mr. Olsen," ¶ 43.  In short, Jibson does not

6

draw the connection between a Metra policy or custom and the discriminatory acts of which she complains. *McCauley*, 671 F.3d at 616.

The only case Jibson cites in support of her *Monell* claim is *City of Canton, Ohio v. Harris*, where the Supreme Court held that a municipality's failure to train police could sustain a § 1983 claim when it amounts to "deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). The plaintiff in *Harris* sued the police department after police failed to get her medical attention while she was in police custody. *Id.* at 381. This does not support, nor is it analogous to, Jibson's argument that Metra's failure to train her "constituted a deliberate indifference to Plaintiff." Doc. 31 at 4. For all of these reasons, Jibson cannot proceed on her § 1983 claims.[4]

**B. Title VII Sex Discrimination Claim**

Turning to Jibson's Title VII sex discrimination claim, Metra argues that Jibson has not made any plausible allegations that her demotion was based on sex. "Unlike § 1983, Title VII allows plaintiffs to use the doctrine of *respondeat superior* to hold a municipal agency vicariously liable for the actions of its employees." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 630 (7th Cir. 2009) (citing *Mateu–Anderegg v. Sch. Dist. of Whitefish Bay*, 304 F.3d 618, 623–24 (7th Cir.2002)). For Jibson's sex discrimination claim to survive a motion to dismiss, she "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Because Jibson has alleged just this, she has sufficiently pleaded her sex discrimination claim.

---

[4] Consequently, the Court does not need to decide Metra's other argument that Jibson's § 1983 claims are time-barred.

7

Metra argues that Jibson has only alleged legal conclusions, instead of factual allegations that are required under *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557. However, in the context of a straight-forward employment discrimination case, courts have found that largely conclusory statements are sufficient. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010) ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario."); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("'I was turned down for a job because of my race' is all a complaint has to say."); *Petrovic v. Enter. Leasing Co. of Chi., LLC,* 513 F. App'x 609, 611 (7th Cir. 2013) (quoting *Bennett* with approval). Here, Jibson has alleged all the elements of a traditional employment discrimination case. She first alleges that Metra took an adverse employment action against her when she was demoted. *See Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009) ("Materially adverse actions include . . . demotion accompanied by a decrease in pay. . . ."). She further alleges that Metra demoted her because of her sex. In support of this, she also alleges that her direct supervisor frequently criticized and berated her, that he failed to properly train her, and that other employees did not help her acclimate to her new position. This gives rise to a plausible scenario wherein Olsen, and thus Metra, discriminated against Jibson because of her sex.

Metra also argues that Jibson's claim is not plausible because Metra replaced her with another woman and now two women serve as foremen. But Metra does not point to any authority holding that a plaintiff's claim of discrimination is not plausible just because the

employer did not discriminate against other people who are members of the plaintiff's protected class. Thus, Jibson may proceed with her sex discrimination claim under Title VII.

C.  **Title VII Retaliation Claim**

Metra argues that Jibson's retaliation claims fail because her initial EEOC complaint was too remote in time to have caused her demotion and, therefore, she has not identified a statutorily protected activity. To plead a Title VII retaliation claim, Jibson need only "allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). Because the Court finds that Jibson's initial EEOC complaint could have plausibly caused her demotion, she has adequately pleaded her retaliation claim at this stage.

Metra relies on *Culler v. Shineski* to argue that the proximity between a protected activity and retaliation, standing alone, must be extremely close in time to raise an inference of discrimination. 840 F. Supp. 2d 838, 847 (M.D. Pa. 2011), *aff'd sub nom. Culler v. Sec'y of U.S. Veterans Affairs*, 507 F. App'x 246 (3d Cir. 2012). But the Seventh Circuit has stated that "no bright-line timing rule can be used to decide whether a retaliation claim is plausible," and "[o]ther factors can always be relevant" to help the court make a case-specific determination. *Carlson*, 758 F.3d at 829.

In *Carlson*, the plaintiff filed a sex discrimination suit against her employer, a railway company. *Id.* at 823. While the lawsuit was pending she was promoted twice, first to the position of substitute yardmaster, and then to the company's manager trainee program. *Id.* While still in training for her new position, the lawsuit settled. *Id.* Subsequently the employer made the training unbearable for plaintiff, forcing her to drop out. *Id.* She then asked to be

reinstated to her previous position as substitute yardmaster, but the employer told her that either there were no positions available, or that she did not have the necessary experience. *Id.* She then applied for such positions as they were posted but she was not even interviewed for them, and the company gave the positions to less qualified employees. *Id.* at 823–24.

Reversing the district court's dismissal, the Seventh Circuit stated that "[a] mechanistically applied time frame would ill serve our obligation to be faithful to the legislative purpose of Title VII." *Id.* at 829. "The facts and circumstances of each case necessarily must be evaluated to determine whether an interval is too long to permit a jury to determine rationally that an adverse employment action is linked to an employee's earlier complaint." *Id.* (citing *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). The court found that the employer's refusal to reinstate plaintiff to the substitute yardmaster position five months *after her lawsuit settled* was enough to survive a motion to dismiss. By comparison, Metra demoted Jibson a little more than a month after the EEOC dismissed her initial charge. For all of these reasons, Jibson has adequately pleaded her Title VII retaliation claim.

## II. Scope of Jibson's Charge

Metra argues that Jibson's discrimination claims prior to her demotion are outside the scope of her second EEOC charge and cannot be resurrected in this suit. To initiate a Title VII action, a plaintiff "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). When a plaintiff files multiple complaints with the EEOC, he or she generally cannot re-allege discriminatory acts

from an earlier EEOC charge to evade compliance with the 90-day period for filing a complaint. *Freeman v. Travelers Cos.*, 63 F. Supp. 3d 867, 872 (N.D. Ill. 2014) ("To allow a plaintiff to re-allege an earlier EEOC charge in a subsequent EEOC charge would render the 90–day time limit for filing lawsuits 'meaningless,' because it would allow the plaintiff to 'evade [the filing requirement] simply by seeking additional Notices of Right to Sue whenever he pleased.'" (quoting *Vitello v. Liturgy Training Publ'ns*, 932 F. Supp. 1093, 1098 (N.D. Ill. 1996))). However, the Court considers the entirety of an employer's behavior to assess the plausibility of hostile environment clams. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). To the extent that Jibson's allegations are relevant to assessing her hostile work environment, Jibson may proceed with those claims.

Jibson states in her response brief that "references to claims more than two years prior to the filing of this lawsuit," i.e. before August 16, 2016, "are for the sole purpose of showing the continuing nature of the employment discrimination." Doc. 31 at 2. The Court construes this to mean that Jibson's claims from the earlier EEOC complaint—filed on March 3, 2016—are only meant to provide context for her hostile work environment claims.[5] The Supreme Court has held that courts can consider "the entire scope" of an employer's acts—"including behavior alleged outside the statutory time period"—to assess such a claim as long as one contributing act took place within the statutory period. *Morgan*, 536 U.S. at 105. This is "[b]ecause such a claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117.

---

[5] The Seventh Circuit has interpreted the Supreme Court's holding in *Morgan*, 536 U.S. at 114, 122, to mean "that there is no general continuing-violation doctrine in the federal law of employment discrimination" anymore. *Crum v. Advocate N. Side Health Network*, 733 F. App'x 842, 843 (7th Cir. 2018).

11

*Tademy v. Union Pacific Corporation* is analogous to Jibson's case. 614 F.3d 1132, 1137 (10th Cir. 2008). In it, the Tenth Circuit considered a plaintiff's hostile work environment claim after he initially settled with his employer after receiving a right-to-sue letter. *Id.* The employee later filed another EEOC charge and filed the lawsuit in question after he received his second right-to-sue letter. *Id.* at 1137–38. The court held that nothing prevented him from suing based on allegations that were originally brought in the earlier EEOC charge. *Id.* at 1151. The court reasoned, in part, that preventing the plaintiff from doing so would undermine the Supreme Court's holding in *Morgan*, 536 U.S. at 117, "which enables hostile environment plaintiffs to rely on claims that are otherwise time barred." *Tademy*, 614 F.3d at 1151.

The reasoning in *Tademy* applies equally to Jibson's case. Furthermore, Jibson is not trying to evade the relevant filing period. Since the demotion—the main focus of her complaint—occurred after her first EEOC dismissed her first charge, her second charge was not a "mere re-allegation" of her first one. *Freeman*, 63 F. Supp. 3d at 873. As such, the Court finds that she may proceed with the allegations from her earlier EEOC charge as they relate to her hostile work environment claim. 614 F.3d a 1151–52.

### III. Preclusion under the RLA

Metra finally argues that Jibson's demotion and claim for relief—specifically her restoration to mechanical foreman or a comparable position—are governed by provisions of the collective bargaining agreement ("CBA") and are therefore precluded by the RLA. The RLA requires that parties resolve "so-called 'minor disputes'" by arbitration rather than in court. *Carlson*, 758 F.3d at 831. Minor disputes are those that can be "conclusively resolved" by interpreting a CBA. *Id.* at 832 (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263, 265, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994)). This means that rights independent of such an

agreement, such as "statutory protections against employment discrimination and retaliation," are not precluded by the RLA. *Id.* This is because "purely factual questions" about an employer's conduct or motivation do not "require[ ] a court to interpret any term of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). Because Jibson's claims revolve around factual questions, the RLA does not preclude her claims.

Metra points to Jibson's grievance with her union to support its argument that the CBA governs her claims. But even if certain terms of the CBA overlap with Jibson's claims, that does not mean the RLA precludes them. *Carlson*, 758 F.3d at 833 ("[I]f a collective bargaining agreement simply prohibits employers from doing something (for example discriminating on a certain basis) or merely allows arbitration of some type of claim, a claim under an independent law covering the same subject matter is not precluded.").

Jibson's case is, again, analogous to *Carlson*, where the plaintiff alleged her employer discriminated against her by refusing to reinstate her to the position of substitute yardmaster. 758 F.3d at 824. The railway company argued that her charge could be "conclusively resolved by an arbitral ruling that she was not qualified under the collective bargaining agreement to be a substitute yardmaster." *Id.* at 833. The court found this argument misconstrued the plaintiff's claims, because even if she was unqualified for the position she would still have a viable claim if "the same potentially disqualifying attributes have been overlooked for men or for others who have not complained about discrimination." *Id.* Similar to the plaintiff in *Carlson*, Jibson "does not claim that she was entitled to a particular job under the collective bargaining agreement." *Id.* Rather, Jibson alleges that she was demoted "because of her sex [and age] and in retaliation for protected activity, in violation of Title VII. Her claims thus depend on a 'factual inquiry into any

13

retaliatory [or discriminatory] motive of the employer' rather than on an interpretation of the collective bargaining agreement." *Id.* Accordingly, the RLA does not preclude Jibson from proceeding with her remaining claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part, and denies in part, Metra's motion to dismiss [29]. The Court dismisses the § 1983 claims (Counts II and V) of the amended complaint without prejudice.

Dated: May 29, 2019

SARA L. ELLIS
United States District Judge